Craig M. Murphy, Esq.
Nevada Bar No. 4014
MURPHY & MURPHY LAW OFFICES
8414 W. Farm Road, Ste 180, Box 207
Las Vegas, Nevada 89131
(702) 369-9696 Phone
(702) 369-9630 Fax
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH ROZICH,<br><br>Plaintiff,<br>vs.<br><br>JBS TOLLESON, Inc.; an Arizona Corporation; DOES 1-20, inclusive; and ROE ENTITIES 1-20, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

The above-named plaintiff, Joseph Rozich, by and through Murphy & Murphy Law Offices, his attorneys of record, complains, states, and alleges as follows:

## I.
## PARTIES

1.1     The plaintiff, Joseph Rozich, at all times material hereto, was and is a resident of Las Vegas, Clark County, Nevada, and is therefore a citizen of Nevada.

1.2     The Defendant JBS Tolleson, Inc., is an Arizona corporation, with its principal office located in Phoenix, Arizona, and is therefore a citizen of Arizona. At all material times, JBS Tolleson was in the business of manufacturing and selling food products, including, without limitation, the manufacture and subsequent sale of ground beef products.

1.3     DOES 1 through 20 inclusive are persons, and ROE ENTITIES 1 through 20 are corporations, related subsidiary or parent entities, associations, or business entities, whose true names and identities and capacities are unknown to Plaintiff at this time.  The DOE Defendants are individual persons acting on behalf of or in concert with, or at the direction of, any of the Defendant.  The ROE Defendants may be corporations, associations, partnerships, subsidiaries, holding companies, owners, predecessor or successor entities, joint ventures, parent corporations, related business entities or the employer of any of the Defendants.  Each named Defendant and the DOE and ROE Defendants are legally responsible for the events and happenings stated in this Complaint, and thus proximately caused injury and damages to Plaintiff. In particular, said DOE and ROE Defendants are responsible in full or in part for the growing, raising, distribution, processing, preparation, contamination, and sale of the raw ground beef sold to or by Defendant.  Plaintiff will ask leave of this Court to insert the true names and capacities for such DOE and ROE Defendants when discovered to substitute those true names as defendants into these proceedings for said DOE and ROE Defendants.

## II.
## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000 exclusive of interests and costs, and this is an action by an individual plaintiff against the defendant with its principal place of business in another state.

2.2     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

///

///

## III.
## RELEVANT FACTS

**The JBS *Salmonella* Newport Outbreak**

3.1     On September 5, 2018, the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") was notified of an investigation of *Salmonella* Newport illnesses with reported consumption of several different FSIS-regulated products by case-patients. The first store receipt potentially linking the purchase of FSIS-regulated product to a case-patient was received on September 19, 2018. FSIS was then able to begin traceback of ground beef products. To date, eight case-patients have provided receipts or shopper card numbers, which have enabled product traceback investigations.

3.2     FSIS, the Centers for Disease Control and Prevention ("CDC"), and state public health and agriculture partners determined that raw ground beef was the probable source of the reported illnesses. Traceback has identified JBS USA Food Company's Arizona-based beef processing facility, JBS Tolleson, Inc., as the common supplier of the ground beef products. The epidemiological investigation has identified 57 case-patients from 16 states with illness onset dates ranging from August 5 to September 6, 2018.

3.3     On October 4, 2018, FSIS announced that JBS Tolleson, Inc. was recalling approximately 6,912,875 pounds of various raw, non-intact beef products possibly contaminated with *Salmonella* Newport. The raw, non-intact beef items, including ground beef, were packaged on various dates from July 26, 2018, to September 7, 2018. The products were shipped to retail locations and institutions nationwide and bear the marking "EST. 267" inside the USDA mark of inspection.

3.4     The Tolleson facility, in operation for about 45 years, processes meat under various brands including 5 Star Beef, Cedar River Farms, Showcase, La Herencia, Four Star,

Clear River. A July 2017 notice from the USDA's Food Safety and Inspection Service accused the Tolleson facility's president of enabling "egregious" and "inhumane" practices with livestock. Officials found two "mentally incoherent" cows laying on their side and "moaning as if in pain." The inspector asked for the cows to be euthanized but one died in its pen before it could be put down. According to an October 2017 agency document, the USDA inspectors deferred action against JBS Tolleson and gave them a chance to implement a proposed action plan

3.5     The 2018 recall announcement came more than a year after the U.S. Department of Agriculture sent the enforcement notice to the company's president and months after one of the company's plants in North Carolina recalled 35,000 pounds of raw ground beef.

*Salmonella* **Infections**

3.6     Salmonella is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals. Salmonella bacteria are usually transmitted to humans by eating foods contaminated with human or animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, but all foods, including vegetables, may become contaminated. An infected food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

3.7     Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 24-72 hours. As few as 15-20 cells of Salmonella bacteria can cause salmonellosis or a more serious typhoid-like fever. Variables, such as the health and age of the host and virulence differences among the serotypes, affect the nature and extent of the illness. Infants, elderly, hospitalized, and immune suppressed persons are the populations that are most susceptible to disease and suffer the most severe symptoms.

4

3.8    The acute symptoms of Salmonella gastroenteritis include the sudden onset of nausea, abdominal cramping, and diarrhea lasting several days. The diarrhea often turns bloody. There is no real cure for Salmonella infection, except treatment of the symptoms. Persons with severe diarrhea may require rehydration, often with intravenous fluids.

3.9    Persons with diarrhea usually recover completely, although it may be several months before bowel habits return entirely to normal. A small number of persons who are infected with Salmonella will go on to develop pains in their joints, irritation of the eyes, and painful urination. This development is called Reiter's syndrome or reactive arthritis, and it can last for months or years, sometimes leading to chronic arthritis that is difficult to treat. Antibiotic treatment does not make a difference in whether the person later develops arthritis.

**The Plaintiff's *Salmonella* Infection**

3.10    The plaintiff, Joseph Rozich, purchased two Crunch Wrap Supremes containing ground beef from the Taco Bell restaurant located at 535 East Windmill, Las Vegas, NV, in the very early hours of August 31, 2018.

3.11    The plaintiff began experiencing severe diarrhea, around 2:00–3:00p.m on August 31, and went to the hospital the same day. The plaintiff's other symptoms included stomach cramps, and nausea. A stool culture taken while he received treatment tested positive for *Salmonella* Newport.

3.12    The plaintiff continues to recover from his *Salmonella*-related injuries.

## IV.    CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY

4.1    At all times relevant to this action, the defendant was the manufacturer and seller of an adulterated food product that, as a result of its defective and unsafe condition due to

*Salmonella* contamination, caused injury to the plaintiff. This food product was the ground beef manufactured and sold by JBS Tolleson.

4.2  The adulterated food product that the defendant manufactured and sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because of its contamination with *Salmonella*, a sometimes deadly pathogen.

4.3  The adulterated food product that the defendant manufactured and sold was given to the plaintiff without any change in its defective condition.

4.4  The adulterated food product that the defendant manufactured and sold was used in the manner expected and intended—that is, consumed by the plaintiff.

4.5  The plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured and sold.

## COUNT II
## NEGLIGENCE & NEGLIGENCE PER SE

4.6  For purposes of this cause of action, the plaintiff incorporates all of the above-stated allegations as if fully set forth here.

4.7  The defendant owed to the plaintiff a duty to use reasonable care in the manufacture and sale of its food products, the observance of which duty would have prevented or eliminated the risk that such food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant breached this duty and was negligent as a result.

4.8  The defendant had a duty to comply with all safety statutes, laws, regulations, and codes including, but not limited to, the applicable provisions of the Federal Food, Drug and Cosmetic Act and similar Nevada food and public health statutes all of which prohibit the manufacture and sale of any food that is adulterated, or otherwise injurious to health. The

defendant failed to do so and was therefore negligent.

4.9  The plaintiff is among the class of persons intended to be protected by these statutes, laws, regulations, safety codes and provision pertaining to the manufacture and sale of food products. Further, foodborne illness caused by the manufacture and sale of pathogen-contaminated food is the type of injury the safety statutes are intended to prevent.

4.10  The defendant had a duty to properly supervise, train, and monitor its employees, and to ensure that these employees complied with all applicable safety statutes, laws, regulations, and safety codes pertaining to the manufacture and sale of food products at a retail food establishment, but the defendant failed to do so and was therefore negligent.

4.11  The defendant had a duty to use ingredients, supplies, and other materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendant failed to do so and was therefore negligent.

4.12  The defendant owed a duty of care to the plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached these duties and was negligent as a result.

4.13  As a direct and proximate result of the defendant's negligence, as alleged above, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## COUNT III
## BREACH OF WARRANTY

4.14  The plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs was set forth here in its entirety.

4.15  By offering food products for sale, the defendant expressly warranted that such

food was safe to eat, that it was not adulterated with a deadly pathogen, and that the food had been safely prepared under sanitary conditions.

4.16  By offering food and drink for sale, the defendant also impliedly warranted that such food was safe to eat, that it was not adulterated with a deadly pathogen, and that the food had been safely prepared under sanitary conditions.

4.17  The defendant breached express and implied warranties with regard to the contaminated food products it manufactured and were consumed the plaintiffs.

4.18  The plaintiff suffered personal injuries and damages as a foreseeable consequence of the defendant's breach of warranties, as set forth above, and are thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for the following relief:

(1)  That the Court award the plaintiff judgment against the defendant in such sums to fully and fairly compensate him for all general, special, and consequential damages incurred, as the proximate result of the unlawful acts and omissions of the defendant;

(2)  That the Court award the plaintiff his related costs and disbursements, and any other relief that the court deems just and equitable;

(3)  That the Court award the plaintiff the opportunity to amend or modify the complaint, if necessary or appropriate after additional or further discovery is completed in this

///

///

///

8

1  matter, and after all appropriate parties have been served.

2

3  DATED this 5th day of October, 2018.

4                                                    MURPHY & MURPHY LAW OFFICES

5

6                                                    _____
                                                     Craig Murphy, Esq.
7                                                    Nevada Bar No. 4014
                                                     8414 W. Farm Road, Ste 180, Box 207
8                                                    Las Vegas, Nevada 89131
                                                     (702) 369-9696 Phone
9                                                    (702) 369-9630 Fax
                                                     Attorney for Plaintiff